IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CINTRON BEVERAGE GROUP, LLP, : | CIVIL ACTION |
|     Plaintiffs                    : | 10-3439 |
|             v.                       : | |
| : | |
| NEMR AOUN d/b/a GARDEN : | |
| BEVERAGES, et al., | |
|     Defendants           : | |
|                                                   : | |

## MEMORANDUM OPINION AND ORDER

Rufe, J.                                                                                                          July 26, 2011

        Plaintiff Cintron Beverage Group LLC ("Cintron") and movant Garden Food Distributor, Inc ("GFDI") entered into an oral distribution agreement under which GFDI would distribute beverages produced by Cintron.  For approximately two years, Cintron sent beverage products to GFDI, and GFDI distributed those products in Michigan, Illinois and Ohio.  GFDI remitted payment to Cintron's Philadelphia headquarters.  When the Defendants failed to make payments owed, Cintron brought this action for breach of contract and unjust enrichment.  Now before the Court is GFDI's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), asserting lack of personal jurisdiction.[1]  For the reasons below, the Court finds that GFDI is not subject to the jurisdiction of this Court.

---

[1] The motion was originally brought by GDFI and Chaker Aoun.  However, Plaintiff stipulated to dismissal of Chaker Aoun d/b/a Garden Foods.  See Doc. No. 9.  The claims against Nemr Aoun d/b/a Garden Beverages were dismissed by stipulation of the parties prior to the filing of this motion.  See Doc. No. 6.

**FACTUAL BACKGROUND**

Plaintiff Cintron is a Delaware limited liability company with its headquarters in Philadelphia, Pennsylvania.[2] Cintron manufactures and distributes various beverage products, including energy drinks, fruit drinks, and teas, through a world-wide network of independent distributors.[3] Defendant GFDI is a Michigan corporation, with its principal place of business in Dearborn, Michigan, engaged in the business of purchasing and distributing beverages in Michigan and Ohio.[4] GFDI has no real estate, personal property, assets, offices, employees, agents, bank accounts, business addresses or phone listings in Pennsylvania, nor does GFDI advertise, sell or distribute any product or render any services in Pennsylvania.[5]

In 2007 or 2008, a Cintron representative contacted GFDI to inquire whether GFDI would be interested in distributing Cintron manufactured beverages in southwest Michigan and Toledo Ohio.[6] Cintron and GFDI entered into an oral distribution agreement, but did not reduce the contract to writing and had no agreement whereby GFDI consented to subject itself to the jurisdiction of any court in Pennsylvania.[7] For approximately two years, the parties maintained a business relationship in which GFDI ordered Cintron beverage products and Cintron delivered those products to GFDI in Dearborn, Michigan for resale in southeast Michigan and Toledo,

---

[2] Compl. ¶ 1.

[3] Compl. ¶ 7-8.

[4] Compl. ¶ 4; Aoun Aff. ¶ 5.

[5] Aoun Aff. ¶¶ 6-8.

[6] Aoun Aff. ¶ 9; Lopez Aff. ¶ 4.

[7] Aoun Aff. ¶ 9.

Ohio.[8]  GFDI did not request that the Cintron product it obtained come from any particular geographical location or source.[9]

For each order delivered to GFDI, Cintron sent an invoice directing GFDI to submit payment to Cintron headquarters in Pennsylvania within 30 days of receipt.[10]  Over two years, GFDI submitted payments to Cintron in Pennsylvania totaling approximately $303,332.24.[11]  But, according to Cintron, GFDI ordered, received, accepted, and resold Cintron product totaling $206,650.20 without making payments, causing financial harm to Cintron in Pennsylvania.[12]  Therefore, Cintron filed a breach of contract complaint in this Court on July 13, 2010.

On August 20, 2010, GFDI answered the complaint and asserted counterclaims, raising lack of personal jurisdiction as its first affirmative defense, and on October 18, 2010, GFDI filed a motion to dismiss for lack of *in personam* jurisdiction.[13]  In support of that Motion, the president of GFDI attests that Cintron personnel and sales representatives visited the GFDI offices and sales representatives in Michigan on multiple occasions, but no employee or officer

---

[8] Aoun Aff. ¶ 11; Lopez Aff. ¶ 5.

[9] Aoun Aff. ¶ 12.

[10] Comp. ¶ 16-17; Lopez Aff. ¶ 6.

[11] Lopez Aff. ¶ 7, 8.

[12] Compl. ¶ 18; Lopez Aff. ¶ 9.

[13] Because Federal Rule of Civil Procedure 12(h)(1) simply requires that a defendant's initial response to the complaint raise the jurisdictional defense, GFDI properly preserved the defense of lack of personal jurisdiction by asserting it as an affirmative defense in its answer.
    GFDI's answer also included counterclaims against Cintron.  Cintron has not argued that GFDI waived his objections to this Court's jurisdiction by asserting counterclaims.  Nevertheless, for the sake of completeness, the Court has determined that the counterclaims GFDI asserted are compulsory counterclaims under Fed. R. Civ. Pro. 13(a)(1), and, by asserting them, GFDI did not waive the jurisdictional defense it raised in the same responsive pleading.  Neifeld v. Steinberg, 438 F.2d 423, 428-29 (3d Cir. 1971); Tagayun v. Lever & Stolzenberg, No. 05-4101, 2007 WL 4570295, at *10 (D.N.J. Dec. 27, 2007); In re Arthur Treacher's Franchise Litigation, 92 F.R.D. 398, 413-14 (E.D. Pa. 1981).

of GFDI has ever been to Pennsylvania to conduct business with Cintron.[14]  Cintron disputes the latter averment, alleging that on July 14, 2008, GFDI sent an employee to Pennsylvania to "deliver a payment of $70,829.55, and to discuss the reconciliation of the outstanding invoices."[15]  Cintron provides no other information about the alleged visit to Pennsylvania.

**STANDARD OF REVIEW**

On a motion to dismiss for lack of personal jurisdiction, a court is required to accept a plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.[16]  Once a defendant raises a jurisdictional defense, the plaintiff has the burden of proving that jurisdiction is proper by affidavits or other competent evidence.[17]  Plaintiff need only establish a prima facie case of personal jurisdiction,[18] and meets this burden by stating the bases for personal jurisdiction with reasonable particularity.[19]  "Factual disputes created by the affidavits, documents, and depositions submitted for the court's consideration are resolved in favor of the non-moving party."[20]  Federal courts sitting in diversity may exercise personal jurisdiction over nonresident defendants to the extent provided by the law of the state in which the federal court sits.[21]

---

[14] Aoun Aff. ¶ 10.

[15] Lopez Aff. ¶ 10.

[16] Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

[17] Id.

[18] Id.

[19] See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

[20] Elbeco Inc. v. Estrella de Plato, Corp., 989 F.Supp. 669, 672 (E.D. Pa. 1997)(citing Friedman v. Isreael Labour Party, 957 F. Supp. 701, 706 (E.D. Pa. 1997)).

[21] Fed. R. Civ. P. 4(e).

Pennsylvania's Long-Arm Statute allows personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the Fourteenth Amendment.[22] Under this standard, nonresident defendants are required to have minimum contacts with Pennsylvania so as not to offend traditional notions of fair play and substantial justice.[23] There are two types of personal jurisdiction: general and specific.[24]

**DISCUSSION**

### I. GENERAL PERSONAL JURISDICTION

There is no basis for general personal jurisdiction over GFDI in Pennsylvania. General jurisdiction exists when a defendant has systematic and continuous contacts with the forum state.[25] In the present case, Cintron did not allege that GFDI had any continuous or systematic contacts with Pennsylvania which could subject it to general personal jurisdiction here.

### II. SPECIFIC PERSONAL JURISDICTION

Specific jurisdiction exists when the claim arises from or relates to contacts purposefully directed at the forum state.[26] The Court may preside over a case "if it is satisfied that the relationship among the defendant, the cause of action, and the forum falls within the 'minimum contacts' framework first announced in International Shoe Co. v. Washington, and later refined

---

[22] 42 Pa. Stat. Ann. § 5322(b) (West 1981); Mellon Bank, 960 F.2d at 1221.

[23] Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

[24] See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984).

[25] Id.

[26] Marten, 499 F.3d at 296.

by the abundant progeny of that landmark case."[27]  To establish specific jurisdiction, a plaintiff must show that: (1) the defendant purposely directed activities at the forum; (2) the litigation arose out of or related to one or more of these activities; and (3) jurisdiction of the court comports with fair play and substantial justice.[28]

    A.    <u>Activities Directed at the Forum</u>

To establish specific jurisdiction, the court must first determine whether the defendant purposely directed activities at the forum.[29]  Specifically, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[30]  Merely entering into a contract with a resident of a forum is not sufficient to establish personal jurisdiction over the defendant.[31]  When analyzing minimum contacts in a contract case, courts consider the totality of the circumstances, including which party initiated the business relationship, the location and character of the contract negotiations, the terms of the contract, the contemplated future consequences, and the parties' actual course of dealing.[32]  Given modern commercial business arrangements, physical presence in the forum by a nonresident defendant is no longer required to establish minimum contacts.[33]  Therefore, mail and wire communications sent by a nonresident defendant into the forum can

---

[27] <u>Mellon Bank</u>, 960 F. 2d at 1221 (citation omitted).

[28] <u>D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 102-3 (3d Cir. 2009).

[29] <u>MacKay v. Donovan</u>, 747 F. Supp. 2d 496, 501 (E.D. Pa. 2010) (citing <u>D'Jamoos</u>, 566 F.3d at 102).

[30] <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958) (citing <u>Int'l Shoe Co.</u>, 326 U.S. at 319).

[31] <u>Mellon Bank</u>, 960 F.2d at 1223.

[32] <u>Remick v. Manfredy</u>, 238 F.3d 248, 256 (3d Cir. 2001); <u>Mellon Bank</u>, 960 F.2d at 1223.

[33] <u>See</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985).

6

constitute the purposeful contacts required to establish personal jurisdiction.[34]  Generally, however, despite the fact that physical entrance is not required, courts in the Third Circuit often emphasize visits or some physical presence in the forum when finding specific personal jurisdiction.[35]

*Negotiation of the Contract.*  When examining specific jurisdiction over contract claims, courts consider whether the nonresident defendant solicited, negotiated, or executed the contract in the forum state.[36]  The court also examines whether the contract contained a forum selection clause,[37] and whether the nonresident defendant knew or should have known that it was dealing

---

[34] Telcordia Tech Inc. v. Telkom S.A. Ltd., 458 F.3d 172, 177 (3d Cir. 2006); see also Grand Entm't Grp v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) (holding that the court had personal jurisdiction over a breach-of-contract case in which the defendants had not physically entered the forum, but had sent at least twelve telexes into the forum and initiated twenty telephone calls with the plaintiffs in the forum regarding contract negotiations); Schiller–Pfeiffer, Inc. v. Country Home Prods., No. 04–1444, 2004 WL 2755585, at *6 (E.D. Pa. Dec. 1, 2004) (concluding that "substantial . . . email communications" with a corporation located in the forum may qualify as sufficient evidence of minimum contacts for the exercise of personal jurisdiction).

[35] See, e.g., Leone v. Cataldo, 574 F. Supp. 2d 471, 479 (E.D. Pa. 2008) (finding sufficient contacts to establish minimum contacts with Pennsylvania where considering the totality of circumstances, defendant's visit and phone calls to Pennsylvania were instrumental in the formation of the contract); Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir. 1990) (finding sufficient minimum contacts to support personal jurisdiction over out-of-state defendant whose contacts with forum consisted of mail and phone communications pursuant to sale of boat, delivery of boat to forum and repairs made by defendant's employees in forum on two separate occasions); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 147-48 (3d Cir. 1992) (finding sufficient minimum contacts to support personal jurisdiction over out-of-state defendant who placed phone calls and correspondence into forum coupled with a meeting in the forum to facilitate closing a loan).

[36] See, e.g., Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 151-52 (3d Cir. 1996) (finding no specific jurisdiction in part because it was "not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract"); Rodale Press, Inc. v. Submatic Irrigation Sys., Inc., 651 F. Supp. 208, 210-11 (E.D. Pa. 1986) (finding no minimum contacts where nonresident defendant entered into three-year relationship with Pennsylvania publisher because plaintiff traveled to Texas to negotiate and execute the contract, orders and payments sent to Pennsylvania were done so at plaintiff's request, and plaintiff had sole control over where it conducted its business); Remick, 238 F.3d at 252, 256 (finding personal jurisdiction where defendant solicited plaintiff's business resulting in fee agreement, defendant sent at least one payment to Pennsylvania, plaintiff performed most services in Pennsylvania office, which defendant should have expected, and parties had repeated informational communications during course of contractual relationship).

[37] See Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 65 (3d Cir. 1984) ("Pennsylvania choice-of-law provision, although perhaps a factor in showing whether the defendants could foresee that their acts would have effects in Pennsylvania, would not itself be enough to vest jurisdiction.").

with a company located in the forum state.[38]

Here, GFDI did not solicit the distribution agreement with Cintron; instead, Cintron approached GFDI to solicit GFDI's distribution services in Michigan. According to the allegations before the Court, the parties entered into an oral agreement, which was finalized without GFDI sending any representative or agent to Pennsylvania. Furthermore, Cintron has not alleged or put forth any evidence suggesting that GFDI reached out to Cintron in Pennsylvania by phone, fax, e-mail or any other method to negotiate the terms of the agreement.[39] The oral agreement did not include an agreement on a forum in which disputes would be litigated.

*Performance of the Contract*. Payment into the forum state is one indicator of purposeful availment,[40] and Cintron alleges that on several occasions GFDI sent payment to Cintron in Pennsylvania, as Cintron's invoices directed. In Mellon Bank East (PSFS), Nat'l Ass'n v. Farino,[41] the Third Circuit found purposeful availment where the defendants were aware they were dealing with a Pennsylvania bank because they signed agreements representing that the plaintiff was a Pennsylvania entity and sent payments and correspondence to the plaintiff's Philadelphia address.

Here, each Cintron invoice directed GFDI to submit payment to Cintron headquarters in Pennsylvania, and GFDI is alleged to have made over $300,000 worth of payments to Cintron. Cintron argues that GFDI was aware that its failure to remit certain payments would cause

---

[38] Mellon Bank, 960 F.2d at 1223.

[39] Compare Grand Entm't Grp., 988 F.2d at 482.

[40] North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990).

[41] Mellon Bank, 960 F.2d at 1223.

harmful consequences to Cintron in Pennsylvania. However, Cintron unilaterally selected to receive payments in Pennsylvania, and does not allege that GFDI benefitted in any way from submitting payments to Pennsylvania rather than to another location.[42] The Court cannot find, particularly in the absence of a long-term written agreement, that merely remitting payment to a location unilaterally selected by Cintron in response to invoices is sufficient to confer jurisdiction. Purchasing goods simply is not enough to subject a buyer to jurisdiction in the state where the seller has its headquarters. The Court does not find that GFDI availed itself of the privileges of the forum simply by mailing payments to Pennsylvania in satisfaction of invoices.

*GFDI's Visit to the Forum.* As the Third Circuit made clear in <u>Carteret Savings Bank v. Shushan</u>,[43] a court can find sufficient minimum contacts to support personal jurisdiction over a nonresident defendant where the defendant makes a single visit to the forum.[44] The sworn affidavit of a Cintron representative asserts that in July 2008, GFDI sent an employee to Pennsylvania to deliver a payment to Cintron and discuss the reconciliation of outstanding invoices. Cintron argues that GFDI purposely directed activities at Pennsylvania by sending an employee to Cintron headquarters in Pennsylvania for this purpose. Although GFDI attests that this visit to Pennsylvania never occurred, factual disputes created by the affidavits submitted for the court's consideration are resolved in favor of the non-moving party,[45] thus this factual dispute is resolved in favor of Cintron.

---

[42] <u>Rondale Press</u>, 651 F.Supp. at 210.

[43] 954 F.2d 141 (3d Cir. 1992).

[44] <u>Id.</u> at 150.

[45] <u>Elbeco Inc.</u>, 989 F. Supp. at 672.

However, even accepting Cintron's allegation as true, GFDI's single visit to Pennsylvania is not sufficient for jurisdiction in this case. Here, the alleged single visit to the forum occurred only *after* Cintron notified GFDI that GFDI was in breach of their payment agreement. Plaintiff alleges that GFDI sent a representative to Pennsylvania to make a partial payment and to discuss the remaining balance owed. In Devault of Delaware, Inc. v. Omaha Public Power Dist.[46] the court held that a defendant who visits the forum in an attempt to resolve a contractual dispute should not be penalized by a holding that such a contact is sufficient to confer jurisdiction, where absent such conduct aimed at resolving a dispute the defendant would not be subject to the jurisdiction of the forum. The Devault court considered the visit to resolve the dispute as one factor in the analysis, but considered it only an "attenuated affiliation" with the forum state.[47]

    B.    Litigation Arose From or is Related to One or More Activities Directed to the Forum

The second part of the inquiry into whether specific jurisdiction exists is to determine whether the litigation arose out of or is related to one or more of the activities that the defendant purposely directed at the forum.[48] Cintron alleges that GFDI ordered, received, accepted, and resold Cintron products totaling $206,650.20 without making payment, causing financial harm to Cintron in Pennsylvania. Because the breach of a contractual obligation to remit payment occurs, and the claim arises, in the state where the obligor fails to remit payments and not in the state of non-receipt by the obligee,[49] the claim in the present case arose in Michigan where GFDI failed

---

[46] 633 F. Supp. 374, 377 (E.D. Pa. 1986).

[47] Id.; Umac, Inc. v. Aqua-Gas AVK Ltd., No. 04-4022, 2005 WL 742497, at *4 (E.D. Pa., Mar. 30, 2005).

[48] MacKay, 747 F. Supp. 2d at 501 (citing D'Jamoos, 566 F.3d at 102-3).

[49] Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994).

to remit payment to Cintron in Pennsylvania. Thus, the present litigation did not arise out of the activities GFDI directed toward Pennsylvania.

The Court next turns to the relatedness inquiry. The Third Circuit has not adopted a bright-line standard for approaching the relatedness requirement, [50] and indeed the Supreme Court has warned against such tests.[51] However in analyzing relatedness, the Third Circuit has articulated guiding standards. As a starting point, the Court must examine whether the claim would have arisen in the absence of the GFDI's contacts (but-for causation).[52] "In contract cases, courts should inquire whether the defendants's contacts with the forum were instrumental in either the formation of the contract or its breach."[53] If it finds but-for causation, the Court must examine whether GFDI received benefits and protection from the forum such that it could reasonably foresee litigation in this forum.[54]

Here, the Court finds that neither the contract's formation nor its breach was related to any activities GFDI directed to Pennsylvania. The verbal contract was formed when Cintron reached out to GFDI in Michigan and proposed a distribution deal. The breach of contract occurred when GFDI received Plaintiff's products in Michigan and failed to remit payment for them from Michigan. No activities GFDI directed at the forum were a but-for cause of Cintron's

---

[50] O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 320 (3rd Cir. 2007).

[51] Int'l Shoe, 326 U.S. at 319.

[52] O'Connor, 496 F.3d at 319-320, 322 (but-for causation provides a useful starting point for the relatedness inquiry).

[53] General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3rd Cir. 2001).

[54] O'Connor, 496 F.3d at 322 ("The animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable.").

claims. Accordingly, the Court does not find that the litigation arose out of or was related to the activities that GFDI directed at Pennsylvania.

    C.    "Fair Play and Substantial Justice"

Finally, the Court must examine whether jurisdiction of the Court would comport with fair play and substantial justice. The Supreme Court identified the following factors to consider in analyzing fairness: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."[55]

GFDI has not argued that jurisdiction would violate substantial justice, having rested solely on allegations that there were not minimum contacts. Therefore, GFDI did not allege any undue burden it would suffer by litigating in Pennsylvania. Pennsylvania courts have a strong interest in providing a forum for a Pennsylvania resident who is injured in the Commonwealth and in having the responsible defendants accountable for their actions in Pennsylvania.[56] Cintron clearly would benefit from the convenience of litigating their claims in this forum. Because the maintenance of this suit would not offend Due Process under the Constitution, the Court finds that jurisdiction of the Court comports with fair play and substantial justice.

**CONCLUSION**

Although subjecting GFDI to the jurisdiction of this Court would comport with fair play and substantial justice, the Court cannot, on the record before it, find that GFDI purposely

---

[55] Burger King, 471 U.S. at 477 (citations omitted).

[56] Elbeco, 989 F. Supp. at 678 (quoting Grand Entm't Grp., 988 F.2d 476).

directed sufficient activities at the forum to have purposefully availed itself of the privilege of conducting activities within the forum. Furthermore, based on the law of this forum, the Court cannot find that the litigation arose out of or was related to one or more of the activities that the defendant purposely directed at the forum. Although this is a close case, the Court finds that Cintron has not satisfied its burden to establish a basis for specific personal jurisdiction over non-resident GFDI in this case. Accordingly, the Court will grant GFDI's Motion to Dismiss for Lack of In Personam Jurisdiction.